George A. Arkwright, J.
The codefendant city seeks to dismiss as legally insufficient against it a complaint wherein the following facts are alleged:
That for a period of time ‘ ‘ before, during and after the 8th day of February 1952,” the codefendant, a labor union, “ was conducting a strike ’ ’ against a certain insurance company; that in furtherance thereof such union maintained “ a picket line consisting of three members of the Union ” in front of a branch office of such insurance company of 1860 Flatbush Avenue, Brooklyn; that on February 8, 1952, “ wMle the plaintiff was peacefully walking along Flatbush Avenue, in the Borough of Brooklyn, in the vicinity of 1860 Flatbush Avenue, the said three employee (sic) and members of the defendant International, without just” (cause?) “ or provocation, - did violently and brutally assault the plaintiff,” causing him to sustain the injuries for which he sues; that such strike had continued for a long time prior to the 8th day of February, 1952 “ and acts of violence had taken place in front of the said premises involving pickets and employees of the said Prudential Insurance Company prior to the 8th day of February 1952 ”; that the moving defendant’s police department were aware of the picketing and of the ‘‘ incidents that had occurred and were occurring in relation thereto”; that it was the duty of the defendant municipality and of its police department “ to maintain a patrol or to have a police officer or patrolman at the scene of the said picketing so as to protect the citizens of the City of New York from becoming involved in any imbroglios or assaults at the *243 location of the said picketing so that citizens could peacefully pass the said premises without harm to them”; that the city and its police department failed to do this “so as to prevent the assault on the plaintiff ” and his being injured as aforesaid, and were negligent. Damages in the sum of $50,000 against the city are sought.
It is not alleged specifically wherein such duty is imposed upon the city’s police department on behalf of a private individual so as to create a civil liability, but presumably it is asserted under the statutory requirements of the New York City Charter, hereinafter referred to.
Perception of the dividing line between legal liability and nonliability, in cases such as this, since the State, in 1929, in the Court of Claims Act, and amendments since enacted, waived its sovereign immunity from civil suit in tort actions, frequently is a difficult one as is demonstrated in the numerous tort cases involving the issue which have come before the courts.
A study of such cases discloses that the instances in which the State and its political units and agencies have been held answerable have fallen into certain general categories, of which the following might be mentioned. The enumeration is not to be regarded, nor is it intended to be offered, as all embracive.
1. Cases where the State or its agencies have been held responsible for the negligent or otherwise tortious acts of its officers or agents. (Instances of this type are to be found in McCrink v. City of New York, 296 N. Y. 99; Bernardine v. City of New York, 294 N. Y. 361; Egan v. State of New York, 255 App. Div. 825.)
2. Cases where the State or its agencies are negligent in the performance of a duty imposed upon them by law for the benefit of a specified class. (Cases typical of this are Foley v. State of New York, 294 N. Y. 275 — failure to maintain traffic lights in proper working order as required by the Vehicle and Traffic Law; and Runkel v. City of New York, 282 App. Div. 173 — negligence and nuisance in failing to safeguard or abate a dangerous and unsafe building under the mandate of the Multiple Dwelling Law and the New York City Administrative Code.)
3. Cases where the State or its agencies voluntarily assume to do an act and negligently fail to perform. (Typical of this category is Dunham, v. Village of Canisteo, 303 N. Y. 498.)
On the other hand, it would appear to be equally well established by judicial opinion and expression that there is still another category in which neither the State nor any of its *244 various agencies are to be held answerable, and some vestige of the State’s ancient immunity as a sovereign survives. Within this category are those types of civil suit involving the duty of a municipality to protect the public against the hazards of crime and fire. (Typical of this category are such cases as Steitz v. City of Beacon, 295 N. Y. 51; Murrain v. Wilson Line, 270 App. Div. 372, affd. 296 N. Y. 845, motion for reargument denied, 296 N. Y. 995; Schuster v. City of New York, 207 Misc. 1102, affd. 286 App. Div. 389; and Landby v. New York, New Haven & H. R. R. Co., 199 Misc. 73, affd. 278 App. Div. 965, motion for leave to appeal denied 303 N. Y. 1014.)
Municipal nonliability in this type of case is thus stated in the Appellate Division opinion in Murrain v. Wilson Line (supra, p. 375): “ The law is established that a municipality is answerable for the negligence of its agents in exercising a proprietary function, and at least for their negligence of commission in exercising a governmental function (Bernardine v. City of New York, 294 N. Y. 361; Holmes v. County of Erie, 266 App. Div. 220, affd. 291 N. Y. 798; Miller v. City of New York, 266 App. Div. 565, affd. 292 N. Y. 571), but a municipality is not liable for its failure to exercise a governmental function, such as to provide police or fire protection. (Steitz v. City of Beacon, 295 N. Y. 51; Springfield Fire Ins. Co. v. Village of Keeseville, 148 N. Y. 46; Finkelstein v. City of New York, 182 Misc. 271, affd. 269 App. Div. 662.) ”
The Appellate Division of this department, in its affirmance of the dismissal of the complaint in the Schuster case (supra) stresses the reasoning of the Court of Appeals in the Steits case (supra) that municipal liability, under the waiver enactment, may be no broader than that cast upon a private individual or corporation which, in turn, must find a basis in contract or an obligation springing from positive law or status. The Appellate Division opinion, at page 391, states: “ There is no claim of any contractual liability. The intestate was not an employee of the police department. Neither did the police assume the duty of a guardian toward him. (Cf. Dunham v. Village of Canisteo, 303 N. Y. 498.) Any liability for the death can be predicated solely on failure to perform a duty to give intestate special protection. As a member of the general public, no duty of special protection was owed to him by the police. (Murrain v. Wilson Line, 270 App. Div. 372, affd. 296 N. Y. 845; Steitz v. City of Beacon, 295 N. Y. 51; Rocco v. City of New York, 282 App. Div. 1012.) Neither by statute nor under the Constitution nor by contract was there imposed on the sovereign State or *245 its agents and servants a duty to give special police protection to the intestate.”
True it is that under its charter the municipal defendant is called upon by the State to establish a police department, whose function and obligations, including the duty “ to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public streets, sidewalks, parks and places; protect the rights of persons and property ” etc., are defined and prescribed in section 435 of the New York City Charter.
But such statutory requirement is not essentially different from that imposed by city defendant’s charter in the Steitz case and the companion cases which follow it, including those above cited. Relative thereto the following statement was made in the Steitz case (supra, p. 56): “ Such enactments do not import intention to protect the interests of any individual except as they secure to all members of the community the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals ” (citing cases and authorities).
It is not difficult to conceive the results which might attend a municipality’s being called upon to respond in jury damages for claimed failure to protect from every crime committed, or even a substantial proportion thereof, or from the losses sustained in, for example, a widespread conflagration. This factor was emphasized in the Steitz case (supra, p. 55) where the court said:" An intention to impose upon the city the crushing burden of such an obligation should not be imputed to the Legislature in the absence of language clearly designed to have that effect.”
Therefore, for the reasons stated, the motion by the defendant city to dismiss the complaint, as to it, is granted.